UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

CIVIL ACTION NO. 3:12-CV-50-H

WILLIAM HIGGINS                                                         PLAINTIFF

V.

GENERAL ELECTRIC COMPANY and                     DEFENDANTS
INTERNATIONAL UNION OF ELECTRICAL
WORKERS-COMMUNICATIONS WORKERS OF AMERICA,
LOCAL 83761

**MEMORANDUM OPINION AND ORDER**

Plaintiff brings suit against General Electric Company ("GE") and the International Union of Electrical Workers-Communications Workers of America, Local 83761 (the "Union") under § 301 of the Labor Management Relations Act (the "LMRA"), 29 U.S.C. § 185. Plaintiff contends that his suspension and subsequent termination from GE, and the Union's failure to properly pursue his grievance, violated his rights under the LMRA. After denying the Union's motion to dismiss in an earlier Memorandum Opinion, the Court now addresses Defendants' separate motions for summary judgment. For the reasons stated herein, the Court grants both motions.

I.

GE hired Plaintiff on April 11, 1994 to work at its Kentucky Appliance Park office. As a non-management employee of GE, Plaintiff became a member of the Union. Various issues tainted Plaintiff's employment with GE over the next fifteen years. For example, he received demerits for tardiness and excessive absences throughout his tenure with GE. Peers complained that he locked a utility locker containing appliances so that other employees could not use them.

Plaintiff contends that one of the appliances was unusable, and he only locked the refrigerator, which he unlocked when asked to do so. One fellow employee reported that Plaintiff affixed an offensive cartoon with his name on it to a coworkers' utility locker, but Plaintiff contends someone else posted the cartoon displaying his name in an effort to have him fired.

In December of 2008, Plaintiff admittedly failed to report to work for two consecutive weeks without prior approval or satisfactory explanation. GE found this absence violated its National Labor Agreement with the Union. As a result, GE terminated Plaintiff's employment on January 16, 2009. The Union intervened on his behalf, and pursued a grievance against GE. GE agreed to reverse its termination decision in exchange for Plaintiff entering a Last Chance Agreement.

The Last Chance Agreement, executed on February 29, 2009, stipulated, in relevant part, that if Plaintiff violated company rules of conduct, he could be discharged immediately for cause. Further, it expressly limited Plaintiff's potential recourse for future termination to whether the discharge complied with the terms of the Agreement. Any grievance filed by the Union on Plaintiff's behalf could not be resolved in arbitration or through legal action in Court.[1] GE's Rules of Conduct characterizes the following as a "serious offense", the commission of which may "result in discharge on the first offense": "Threatening, intimidating, coercing or interfering with employees, supervision or Plant Security personnel, including harassing employees on account of their race, sex or disability." ECF No. 28-7. GE cites this rule as the ground for terminating Plaintiff. Both parties agree that the Last Chance Agreement was still in effect at the time leading up to Plaintiff's ultimate termination.

---

[1] Defendants argue that the Last Chance Agreement thus restrains Plaintiff's ability to file suit in federal court over his termination. While Plaintiff does not address this argument, the Court finds that such a prohibition may be unenforceable. However, the Court need not rule on this issue, because the Court disposes of the claims on other grounds.

Sometime in early April, Plaintiff learned that a co-worker, Tracy Hall, had complained about Plaintiff. Over the Union's protests, Plaintiff called a meeting with Hall, representatives from GE, and representatives from the Union to discuss the matter. When Plaintiff arrived at the meeting, Hall was already explaining her problems with Plaintiff to the group. How Plaintiff reacted to Hall's statements is disputed. Defendants claim that Plaintiff either called Hall a "f—ing liar" or stated that he was "f—ing done with this meeting", or both. Then Plaintiff made some type of gesture. Plaintiff claims he threw his two hands backwards to signal that the meeting was over. Defendants contend that Plaintiff, with one or two hands, made a throat-slashing gesture. Affidavits filed in the record indicate that some, though not all, of those present found the gesture to be threatening.

Upon information from Plaintiff's supervisor, Nathan Burt, Plaintiff contends that after the April 6, 2011 meeting, but before GE decided to terminate Plaintiff, Union President Jerry Carney spoke with Wade Ellis, GE's Labor Relations Strategic Manager. The content of that discussion is unclear. Defendants maintain that Ellis and Carney's contact was relatively benign; Ellis asked Carney how the meeting went, and Carney told Ellis to speak with his people about the meeting. Plaintiff doubts that the contact was so placid, and claims that this contact alone raises the inference that GE and the Union colluded to achieve his termination.

Allegedly because of his actions during the April 6, 2011 meeting, GE terminated Plaintiff on April 26, 2011. The Union then followed through with the three-step grievance procedure established to challenge adverse employment decisions. In Step 1, the Union filed a grievance, which GE denied. In Step 2, the Union president appealed the denial to the top-ranking official at the GE Appliance Park. GE did not amend its decision. Finally, the Union continued to the third and final step of the grievance process, wherein the International Union

Representative appears before GE's National Representative to plead the employee's case ("Step 3"). According to the rules regulating the Union, a local Union steward is to accompany the International Union Representative to this appeal, but in Plaintiff's case, the Union sent the Local Union Vice President Todd Henley, who possessed little personal knowledge of Plaintiff's case. However, Union President Carney was present during the appeal. Again, GE upheld its decision. The Union did not take the case to arbitration, and the National Labor Relations Board subsequently dismissed Plaintiff's challenge against the Union for its allegedly deficient representation. Plaintiff then filed suit in this Court.

II.

GE and the Union filed separate motions for summary judgment. A court will grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The Court will view all facts in a light most favorable to Plaintiff, and give Plaintiff "the benefit of all reasonable inferences that can be drawn from the facts." *Stack v. Killian*, 96 F.3d 159, 160 (6th Cir. 1996). Plaintiff argues that the Court should deny summary judgment, because he can establish that Defendants violated his rights under the LMRA.

Traditionally, according to the LMRA, a union is the sole representative of its employee-member when handling an employee's grievance against his employer. However, union members are permitted to file a hybrid suit against the employer and the union under the terms of § 301 of the LMRA. Here, Plaintiff filed such a suit.[2]

> A hybrid § 301 suit implicates the interrelationship among a union member, his union, and his employer. . . . To recover against a union under § 301, the union member must prove both (1) that the employer breached the collective

---

[2] Defendants characterize this lawsuit as a hybrid § 301 action. Plaintiff does not contest this characterization. For purposes of this Memorandum Opinion, and without so ruling, this Court accepts Defendants' characterization as true.

> bargaining agreement and (2) that the union breached its duty of fair representation.

*Vencl v. Int'l Union of Operating Eng'rs, Local 18*, 137 F.3d 420, 424 (6th Cir. 1998). The plaintiff must satisfy the same two-pronged test for claims against the employer. If the plaintiff fails to prove one or both of these two necessary prongs, he cannot recover against either the union or the employer under § 301. *White v. Detroit Edison Co.*, 472 F.3d 420, 425 (6th Cir. 2006). In its motion for summary judgment, the Union argues that it satisfied its duty of fair representation. Similarly, GE contends that Plaintiff cannot prove that GE breached the National Labor Agreement. Because the Court first finds that the Union is correct, the Court need not analyze the substance of GE's motion. As stated above, granting summary judgment in favor of the Union necessitates a similar resolution of GE's motion.

### III.

Under § 301, a union has the duty to fairly represent its members "to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law." *Vaca v. Sipes*, 386 U.S. 171, 182 (1967). A union breaches this statutory duty "only when [its] conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith." *White*, 472 F.3d at 424 (quoting *Vaca*, 386 U.S. at 190). Plaintiff presents no argument that the Union acted discriminatorily, so Plaintiff must premise his claim either on the Union's arbitrariness or bad faith.

Plaintiff avers that the Union failed to fairly represent him in two ways: 1) the Union and GE engaged in illicit contact during discussions related to Plaintiff's employment, and 2) the Union failed to take a Union steward with the International Representative to Step 3 of the grievance process. The Court finds that neither action was arbitrary or made in bad faith, and as such, Plaintiff's claims against the Union and GE must fail.

A.

Plaintiff's allegations of illicit contact are purely speculative. Plaintiff merely guesses as to the content of the conversation between Carney and Ellis. Instead of providing any substantiation, Plaintiff asks the Court to make an inferential leap from the following abstract averments to the conclusion that the Union assisted GE in terminating Plaintiff's employment: Plaintiff voiced opposition to some of Carney's actions as president of the Union at a Union meeting in February[3], the conversation between Carney and Ellis occurred immediately after the April 6, 2011 meeting and before GE decided to terminated Plaintiff, and Carney did not himself disclose that this contact took place. The Court need only accept reasonable inferences and declines to adopt Plaintiff's baseless theories. Even taking the facts in the light most favorable to Plaintiff, Plaintiff has at most proven that Carney and Ellis spoke after the April 6, 2011 meeting. Plaintiff has not shown that a reasonable juror could believe that the conversion was improper. Accordingly, Plaintiff cannot rest his claims against the Union on the mere instance of contact between Carney and Ellis.

B.

As to Plaintiff's second allegation of unfair representation, Plaintiff makes a claim that the Union's failure to precisely follow Union procedure necessitates a finding that the Union did not fairly represent him. The Supreme Court has determined that a union fails to fulfill its duty

---

[3] At some point in February 2011, Plaintiff began harboring complaints about the Union, and specifically Union President Carney. Plaintiff voiced his intention to bring up his issues at the next Union meeting. Although Union officials pressured Plaintiff to disclose the nature of his issues prior to the meeting, Plaintiff raised his complaints against Carney for the first time at the Union meeting.

Plaintiff cites a Second Circuit case for the proposition that the Union breached its duty of fair representation if it participated with management and his discharge operated as retaliation for his complaints with the Union. *See Cunningham v. Erie R.R. Co.*, 266 F.2d 411, 417 (2d Cir. 1959). The case Plaintiff cites is wholly distinguishable from the present case, and provides little instruction for the Court. Nevertheless, if Plaintiff was able to prove collusion between the Union and GE, Plaintiff may have presented a cognizable claim against both parties. However, Plaintiff has not established such collusion beyond conclusory allegations. That Plaintiff complained publicly about Carney close in time to when GE fired Plaintiff does not prove that the Union acted arbitrarily or in bad faith with regards to its representation of Plaintiff. If Plaintiff rests its claims against the Union on this ground alone, Plaintiff's claim must be dismissed.

of fair representation when, "in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside the 'wide range of reasonableness,' as to be irrational." *Air Line Pilots Assoc. Int'l v. O'Neill*, 499 U.S. 65, 67 (1991) (quoting *Ford Motor Co. v. Huffman*, 345 U.S. 338 (1953)). Plaintiff provides no case law suggesting that the Court is bound to strictly enforce Union procedure, and that any minor defect in following Union procedure necessitates a finding of unfair representation. Without such legal restrictions, the Court finds that the Union's error in failing to send a Union steward to the appeal in Step 3 amounts to a mere technicality rather than a substantive failure.

Step 3 of Plaintiff's grievance process took place in Cleveland, Ohio, some distance from the Louisville, Kentucky office at issue here. The Union needed find a local representative available to travel to the appeal, and chose the local vice president. This is reasonable given that the International Representative, who was certainly present, is the principal advocate for the Union member in the appeal. That the Union sent its local vice president rather than a Union steward is apparently immaterial, especially in light of the fact that Carney, who had intimate knowledge of Plaintiff's case, was present during the meeting.

Plaintiff does not argue that the Union steward would have contributed to the appeal in any meaningful way, and that Carney would have been unable to provide the type of contribution Plaintiff sought. The Union's actions were reasonable, and therefore, not arbitrary. Moreover, the Union pursued the grievance through all three steps, even when it apparently was not obliged to do so according to the Last Chance Agreement. This fact alone disproves any potential argument that the Union acted in bad faith. Plaintiff presents no other contentions evidencing that the Union failed to fairly represent him during the grievance process. Accordingly, Plaintiff's claims against the Union and GE must fail.

Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants General Electric Company and International Union of Electrical Workers-Communications Workers of America, Local 83761's motions for summary judgment (ECF Nos. 28, 29) are SUSTAINED and Plaintiff's claims are DISMISSED WITH PREJUDICE.

This is a final order.

cc: Counsel of Record